# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM H. HOARD, III, | 1:11-cv-01487-DLB (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |
| v. | |
| STATE OF CALIFORNIA, | [Doc. 1] |
| Respondent. | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 305(b).

BACKGROUND

Following a jury trial in the Kern County Superior Court, Petitioner was convicted of second degree robbery with a knife (Cal. Penal Code[1] §§ 212.5(c) & 1022(b)(1)) and misdemeanor resisting arrest (§ 148(a)(1)). The jury also found that Petitioner served a prior prison term within the meaning of California Penal Code section 667.5, subdivision (b). Petitioner was sentenced to five years in state prison.

Petitioner filed a timely notice of appeal. On September 10, 2009, the California Court of Appeal, Fifth Appellate District affirmed the judgment.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

On December 2, 2009, Petitioner filed a petition for review in the California Supreme Court. The petition was denied on December 2, 2009.

Petitioner then filed a petition for writ of habeas corpus in the Kern County Superior Court. The petition was denied on June 21, 2010.

On May 3, 2010, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. That petition was denied on March 2, 2011.

Petitioner filed the instant federal petition for writ of habeas corpus on August 23, 2011. Respondent filed an answer to the petition on January 26, 2012. Petitioner did not file a traverse.

## STATEMENT OF FACTS

### Facts-Prosecution Case

At approximately 10:05 a.m. on May 26, 2008 (May 26), a Black man, wearing dark clothing, a beanie and a mask, and holding a knife in his hand, entered Margin's Market Liquor Store (liquor store) as Jung Chi, the owner of the store, was standing in front of the counter. The man demanded money. Chi handed the man some money. She then opened a cash register and the man took some more money and ran out of the store. After waiting a few minutes, Chi telephoned her husband and then the police. The man made off with approximately $1,200.

On May 26 at approximately 10:00 a.m., as John Washington was driving near the liquor store, he saw a man run out of the store. Washington pulled up in front of the store and the man, as he ran by, kicked Washington's car. The man ran toward, and then into, an alley, and Washington followed him in his car. As the man ran, he started taking off articles of clothing.

The man "turned the corner," and Washington lost sight of him. Approximately 15 seconds later, Washington saw a Black man emerge from the back yard of a nearby residence, climb over a fence and run toward Washington, who was sitting in his parked car. There was nothing covering the man's face. He was Black, and his "clothing . . . was the same" as the man Washington had seen seconds before. As the man approached Washington, he pulled out a knife. As the man ran by Washington's car he kicked it and continued running. Washington followed, and the man jumped over a cement fence. At that point, Washington drove back in the direction of the liquor store.

While driving, Washington saw the same man, running near a building that was formerly a K-Mart store. When Washington got back to the liquor store, he made contact with a police officer who had arrived on the scene. Less than a minute later, with Washington driving his car and the officer following in his, Washington led the officer to the old K-Mart store.

At 10:38 a.m. on May 26, City of Bakersfield Police Officer Nathan McCauley and his partner, responding to a report they received from police

dispatch, were in the vicinity of the liquor store when they saw a Black male, who met the "suspect description" the officers had received; the man was wearing black clothing and he was walking in the area of some dumpsters.

Officer McCauley got out of his car and approached the man, whom the officer later identified as [Petitioner]. The officer did not see anything in the man's hands and could not tell if he was collecting cans. As the officer approached he said, "let me talk to you for a second, sir." [Petitioner] said, "hold on a second," The officer responded that he needed to talk to [Petitioner], but [Petitioner] began to walk away. The officer, who continued to approach [Petitioner], yelled for him to stop, but [Petitioner] ran off and jumped over a wall.

The officer ran to the spot where [Petitioner] went over the wall, but [Petitioner] was not visible. At that point, Officer McCauley put out a radio call to other police officers, informing them of what he had seen.

On May 26, sometime after 10 a.m., City of Bakersfield Police Officer Tyler Kinney responded to the scene and "started looking for a suspect." He encountered [Petitioner] in the yard of an apartment complex; [Petitioner] appeared to be in the process of removing his shirt. [Petitioner] was wearing a black beanie cap and he had a pair of gloves in his pocket. Officer Kinney took [Petitioner] into custody.

Police took Washington to an in-field "show up" at a location approximately two or three blocks away from the liquor store. The police had a man in custody. Washington recognized him as the man he had seen running out of the liquor store earlier.

Police transported Chi to the location where [Petitioner] had been arrested, approximately three blocks from the liquor store. There, police had [Petitioner] in custody; he was standing in the alley. Chi testified the man was the same height and weight as the man who robbed her, and was wearing pants similar to those worn by the robber. Chi had not been able to see the robber's face and was not able to positively identify [Petitioner] as the man who robbed her.

Facts-Defense Case

Bonnie Bowden, a friend of [Petitioner's], testified to the following: She was with [Petitioner] from 9:00 a.m. to 10:30 a.m. on May 26, in an alley near an old K-Mart store, looking for cans for recycling. At one point, [Petitioner] was looking for cans in some dumpsters when two police officers approached on foot and spoke to [Petitioner]. [Petitioner] at that point, walked over a brick wall, jumped over it and ran. The officers gave chase.

On July 25, 2008, a defense investigator showed Washington a photographic line-up consisting of six photographs. [Petitioner's] photograph was in the "number five position." The investigator asked Washington if any of the photographs depicted "the person or persons who committed the crime." Washington stated, "I think it is No.2...." Police officers searched [Petitioner's] person, the area where officers first observed [Petitioner] and the area where [Petitioner] was seen running, but found no currency, bandana, scarf, mask or knife.

3

Procedural and Additional Factual Background

[Petitioner] did not testify at trial.

A police officer testified on cross-examination that after [Petitioner] was taken into custody, "it [was] determined that [Petitioner] had a bench warrant for his arrest[.]" The witness confirmed "that's something if you don't show up for court or you don't comply with some rule of court they issue a warrant for your arrest that goes into the system," and that "data base ... can be accessed by police officers."

In closing argument, the prosecutor asserted, "Look at what the actions by the defendant are. The defendant runs, that would make some sense if it was just a warrant. Except for there is no testimony given necessarily that he knew that he had a warrant. We don't know what the warrant was for."

[Petitioner] objected to the prosecutor's argument. At the subsequent hearing outside the presence of the jury, defense counsel argued that the prosecutor's comment that there was "no testimony" that [Petitioner] knew of the outstanding bench warrant constituted an impermissible comment on [Petitioner's] failure to testify because only [Petitioner] "could produce testimony as to what [he] would know[.]" The court rejected [Petitioner's] argument, stating: "I do not think that that statement compels that the defendant has to take the stand to establish whether or not he knew that there was a warrant or not."

(LD 3, at 2-5.)

## DISCUSSION

I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.

1996).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000).  Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)).  "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.  Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent.  Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009).  Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011).   Under § 2254(d)(1), review is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011).  "A state court's determination that a claim lacks merits precludes federal habeas

5

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

III. Prosecutor Committed Griffin Error

Petitioner contends the prosecutor violation his right not to testify during comments made in closing argument. The California Court of Appeal issued the last reasoned decision denying the claim stating:

> [Petitioner's] defense was that someone else, not he, committed the robbery. And as indicated above, the record shows the following: the evidence of [Petitioner's] guilt included police testimony that [Petitioner] ran from police (see *In re Lynette G*. (1976) 54 Cal.App.3d 1087, 1095 ["flight is one of the factors which is relevant in determining consciousness in guilty"]); in an attempt to rebut this evidence, the defense adduced evidence that a bench warrant for [Petitioner's] arrest was outstanding at the time of [Petitioner's] flight from police, thereby suggesting an explanation for [Petitioner's] flight other than consciousness of guilt of the instant offense; and the prosecutor, to counter any such inference, argued "there is no testimony given necessarily that he knew that he had a warrant." [Petitioner] contends the prosecutor's argument would have been understood by the jury as a comment on [Petitioner's] failure to testify, in violation of *Griffin*, because [Petitioner] asserts, "[he] is the only person who could have testified whether he was aware of the warrant." We disagree.
>
> "'*Griffin* forbids earlier direct or indirect comment upon the failure of the defendant to take the witness stand. The rule, however, does not extend to comments on the state of the evidence or on the failure to the defense to introduce material evidence or to call logical witnesses. [Citation.]' [Citation.]" (*People v. Hovey* (1988) 44 Cal.3d 543, 572; accord, *People v. Medina* (1995) 11 Cal.4th 694, 755.) In determining whether *Griffin* error has occurred, we must determine

6

whether there is a reasonable likelihood that the jury construed the statements as a comment on the defendant's failure to testify at trial. (*People v. Clair* (1992) 2 Cal.4th 629, 663.)

*Griffin* error of the indirect-comment sort occurs, for example, when "a prosecutor ... argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided only by the defendant, who therefore would be required to take the witness stand." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339.) But this does not mean that a comment on the absence of testimony is equivalent to a comment on defendant's failure to testify. Thus, in *Bradford*, no *Griffin* error occurred when the prosecutor argued that the victims had been killed for pleasure and that there was "'no evidence to the contrary.'" (*Id*. at p. 1338.) As our Supreme Court explained, "The prosecutor did not allude to the lack of refutation or denial by the sole remaining witness, defendant, but rather to the lack of evidence, which might have been presented in the form of physical evidence or testimony other than that of defendant." (*Id*. at p. 1340.)

The comment of the prosecutor, about which [Petitioner] complains, did not directly or indirectly refer to [Petitioner's] failure to testify, but was a fair comment on state of the evidence. The prosecutor referred to the absence of any evidence that [Petitioner] knew of the warrant. Contrary to [Petitioner's] assertion, evidence of his knowledge could have been presented in ways other than his testimony. If, as [Petitioner] sought to establish, he knew of the warrant, he got that information somehow. Somebody might have told him. And evidence that somebody told [Petitioner] of the bench warrant would constitute circumstantial evidence of knowledge. (See *People v. Mayo* (1961) 194 Cal.App.2d 527, 535 ["knowledge, like other facts, may be proved by circumstantial evidence"].) Thus, as in *Bradford*, the missing evidence "might have been presented in the form of physical evidence or testimony other than that of defendant." (*People v. Bradford*, *supra*, 15 Cal.4th at p. 1340.) There was no *Griffin* error.

Even if the challenged statement violated *Griffin*, we would conclude that the error was harmless. The applicable test for determining whether an error which violates federal constitutional principles is reversible is set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*), which held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Id*. at p. 24.) "[I]n determining whether prejudicial *Griffin* error has occurred, 'we must focus upon the extent to which the comment itself might have increased the jury's inclination to treat the defendant's silence as an indication of his guilt. The risk that a comment will have this effect may become considerable if either the court [fn omitted] or the prosecution [fn omitted] "solemnizes the silence of the accused into evidence against him" ... by telling the jury "that from the failure of [the defendant] to testify . . . the inferences from the facts in evidence [should] be drawn in favor of the State." ... A forbidden comment, however, is less likely to affect the "substantial rights" of a defendant ... if that comment merely notes the defendant's silence and includes no suggestion that, among the various inferences which might be drawn therefrom, those unfavorable to the defendant are the more probable.'" (*People v. Vargas* (1973) 9 Cal.3d 470, 478, quoting *People v. Modesto* (1967) 66 Cal.2d 695, 713.)

If *Griffin* error occurred here, it was similar to the error in *Vargas*. There, a prosecutor argued during rebuttal: "'[T]here is no evidence whatsoever to contradict the fact that [a witness] saw [defendants] over [the victim]. And there is

7

no denial at all that they were there [robbing the victim]. The defendants are guilty beyond any reasonable doubt....'" (*People v. Vargas*, *supra*, 9 Cal.3d at p. 474.) The court concluded that *Griffin* error was committed because the term "'denial' connote[d] a personal response by the accused himself" because "only defendant himself could 'deny' his presence at the crime scene." (*Id*. at p. 476.) However, the court further concluded that the error was harmless beyond a reasonable doubt. (*Id*. at pp. 476, 481.) The court noted that the prosecutor's remark "was brief and mild, and amounted to no more than an indirect comment upon defendant's failure to testify without suggesting that an inference of guilt should be drawn therefrom." (*Id*. at p. 479.) The court also observed that "cases which have considered the prejudicial effect of errors similar to those committed in the instant case almost uniformly have found those errors to be harmless." (*Ibid*.; *accord*, *People v. Monterroso* (2004) 34 Cal.4th 743, 770 ["'"[i]ndirect, brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error."'"].)

      We likewise conclude that the prosecutor's single remark here was "brief and mild," and, if it commented on [Petitioner's] failure to testify, it did so indirectly, without suggesting the jurors should draw an inference of guilt therefrom. (*People v. Vargas*, *supra*, 9 Cal.3d at p. 479; compare *Chapman*, *supra*, 386 U.S. at p. 19 [*Griffin* error prejudicial where prosecutor "fill[ed] his argument to the jury from beginning to end with numerous references to [defendant's] silence and inferences of [defendant's] guilt resulting therefrom" (over 20 references to defendant's failure to testify)]; *People v. Guzman* (2000) 80 Cal.App.4th 1282, 1290 [*Griffin* error prejudicial where prosecutor referred four times to defendant's failure to testify and "used a demonstrative chart to get this point across"].) In addition, the case against [Petitioner], though not overwhelming, was strong. Finally, we note that the court instructed the jury in accordance with CALCRIM 355 that [Petitioner] could rely on the state of the evidence, he had an absolute constitutional right not to testify and jurors "[could] not consider, for any reason at all, the fact that the defendant did not testify." Jurors are presumed to follow the court's admonitions and instructions. (*People v. Young* (2005) 34 Cal.4th 1149, 1214.) On this record, *Griffin* error, if any, was harmless beyond a reasonable doubt.

(LD 3 at 6-9.)

In <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965), the Supreme Court held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." If <u>Griffin</u> error occurs, reversal is required only if "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction, and (3) [] there is evidence that could have supported acquittal." <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993) (quoting <u>Lincoln v. Sunn</u>, 807 F.2d 805, 809 (9th Cir. 1987).

Later, in United States v. Robinson, 485 U.S. 25, 32 (1988), the Supreme Court concluded that, "where ... the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege." There, the defendant's trial counsel "charged that the Government had unfairly denied respondent the opportunity to explain his actions" several times, and "concluded by informing the jury that respondent was not required to testify, and that although it would be natural to draw an adverse inference from respondent's failure to take the stand, the jury could not and should not do so." Id. at 27-28. The prosecutor then commented on the insurance fraud defendant's prior statements to investigators before saying, "[h]e could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain." Id. at 28. The Supreme Court held "that the prosecutor's statement that respondent could have explained to the jury his story did not in the light of the comments by defense counsel infringe upon [the defendant]'s Fifth Amendment rights." Id. at 31.

Here, the California Court of Appeal's rejection of Petitioner's Griffin error claim was not contrary to, nor an unreasonable application of, clearly established federal law. The prosecution's comments during closing arguments were not a direct attack on Petitioner's failure to testify. Nor did the single comment indirectly attack, or call attention to, Petitioner's failure to testify. Instead, the prosecution's comment directly related to Petitioner's argument that there was an outstanding bench warrant for his arrest to support an inference that was the reason for his flight after the crime. Rather than point to Petitioner's own failure to testify on the subject, the prosecution merely stated that the jury had not heard that Petitioner was aware he had a bench warrant. Thus, the prosecution merely pointed to Petitioner's failure to introduce material evidence or to call other individuals whose testimony could counter the consciousness of guilt inference. Consequently, the comments were not of "such a character that the jury would naturally and necessarily take it to be a comment on the failure" of Petitioner to testify. Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987).

Moreover, even if the comment resulted in Griffin error, there is no showing of any resulting prejudice to Petitioner. The prosecution's comment was isolated in nature, and it was

9

never insinuated that the jury should draw an inference of guilt from Petitioner's failure to testify. In addition, the jury was instructed with CALCRIM No. 222, which stated, in relevant part:

> You must decide what the facts are in this case. You must use only the evidence that was presented in this courtroom. "Evidence" is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.
>
> Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true.

(CT 123; RT 469.)

The jury was also instructed pursuant to CALCRIM 355 that:

> A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way.

(CT 137; RT 534-535.)

Such instructions were sufficient to cure any prejudice Petitioner may have suffered from the allegedly impermissible comment. The Court presumes the jury followed the instructions that it was given. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

In light of the foregoing, the Court concludes that Petitioner has failed to show that the prosecutor's isolated comment "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

IV.   Insufficient Evidence to Support Conviction for Second Degree Robbery

Petitioner contends there was insufficient evidence to support his conviction of second degree robbery.

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

California Penal Code section 211 defines robbery:

> Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

California Penal Code section 211a provides:

> All robbery which is perpetrated by torture or by a person being armed with a dangerous weapon is robbery in the first degree. All other kinds of robbery are of the second degree.

After reviewing the record in the light most favorable to the prosecution and in accordance with the deferential review required under AEDPA, it cannot be said that no rational trier of fact could find Petitioner was guilty of second degree robbery beyond a reasonable doubt. Here, the jury was presented with evidence that a man wearing a mask and beanie robbed a liquor store armed with a knife, and fled the area, after kicking John Washington's car. Washington followed the robber and saw Petitioner's face once he removed the mask. Washington got a good look at Petitioner's face as he ran towards his car a second time. Based on the identifications by the store clerk and Washington, the officers were able to locate Petitioner in a near-by field. Petitioner fled on foot and was later arrested while attempting to remove his shirt.

Washington identified Petitioner as the man he followed running out of the liquor store. The store clerk indicated that Petitioner was the same height, weight and build as the masked man who robbed her. The store clerk also recognized the pants that Petitioner was wearing.

Although Petitioner did not have money or a weapon on his person when he was arrested and Washington later identified someone else as the robber in a photographic line-up, there is still sufficient evidence for a rational jury to find Petitioner guilty of second degree robbery beyond a reasonable doubt based on the evidence described above. Thus, the state courts' determination of

this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## V.     Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court declines to issue a certificate of appealability.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus be DENIED;
2. The Clerk of Court be directed to enter judgment in favor of Respondent; and
3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:  **March 9, 2012**              /s/ **Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE